783 P.2d 322

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Petitioner–Appellant,**

v.

**Maria G. SANDOVAL, Respondent.**

No. 17856.

Court of Appeals of Idaho.

Dec. 4, 1989.

Jim Jones, Atty. Gen., by Weldon B. Stutzman, Deputy Atty. Gen., Boise, for petitioner-appellant.

Gigray, Miller & Downen, of Caldwell, Idaho, for respondent. William F. Gigray III argued.

PER CURIAM.

This is the second appellate round in a dispute over discharge of an employee by the Department of Health and Welfare. The employee, Maria Sandoval, was reinstated by the Personnel Commission. In *Department of Health and Welfare v. Sandoval,* 113 Idaho 186, 742 P.2d 992 (Ct.App.1987) (*Sandoval I*), we vacated the Commission's order and remanded the case for reconsideration. The Commission then issued a supplemental order, expressing further reasons for its prior determination and confirming the reinstatement of Sandoval. In this appeal, the Department of Health and Welfare argues that the Commission on remand (1) failed to state any cogent reason for its decision, (2) mischaracterized the facts, (3) incorrectly weighed the evidence, and (4) placed an improper burden of proof upon the Department. Today, for reasons which we now explain, we affirm the district court's decision upholding the Commission's latest action.

Although many of the facts are stated in *Sandoval I,* we will summarize them again here. On December 22, 1983, Maria Sandoval, a Department employee working at the Idaho State School and Hospital, filed a report briefly describing an incident in which a mentally retarded resident named Chris said that another resident named Bobby had been "after him." On December 29, 1983, it was discovered that Chris

had been severely beaten. An investigation followed. Another hospital worker, Miss Bernie Parks, asserted that Sandoval had admitted beating Chris and had admitted prior incidents of abuse as well. The Department concluded that a beating had occurred on December 22 and that Sandoval was responsible for it. She was discharged.

Sandoval appealed to the Idaho Personnel Commission and a hearing officer took testimony. Parks testified, reiterating her allegation that Sandoval had confessed to the beating in question and to prior abuse. Sandoval denied beating any residents or making such an admission to Parks. The hearing officer chose to believe Parks and concluded that the Department had discharged Sandoval for cause. However, the Personnel Commission disagreed with its hearing officer and ordered Sandoval reinstated in her job. The Department of Health and Welfare appealed the Commission's order to the district court, where it was affirmed. The Department then appealed to us and, in *Sandoval I,* we vacated the order and returned the case to the Commission for reconsideration. We held that the Commission could not override its own hearing officer's credibility determination unless it identified a cogent, articulable reason for doing so. On remand, the Commission again ordered Sandoval's reinstatement. The district court affirmed and the Department brought this second appeal to us.

■ The Department argues that the Commission did not give any cogent reasons for overriding the hearing officer's acceptance of Parks' testimony. We disagree. The Commission noted that if Parks' testimony were true, it would mean that she had failed to disclose prior incidents of abuse. Of course, this might simply mean that Parks had been protective of Sandoval in the past and, therefore, was credible when she finally reported on her colleague. However, the Commission also could have inferred that Parks was not consistent in her concerns about abuse and, consequently, was less credible as a witness. The Commission apparently opted

for the second inference. We will not disturb that decision. It was the Commission's task as the fact-finder to decide which inference should be drawn.

The Commission also found it implausible that such severe abuse could have occurred on December 22, yet remain undiscovered until December 29. The Commission decided the abuse must have occurred on some other day. The Department now contends that this discrepancy over dates had no bearing on Parks' credibility because she never stated that the abuse occurred on December 22. Narrowly speaking, this is true. However, Parks did testify that Sandoval said she abused Chris after he and another resident became involved in an incident. This testimony, with its description of an incident between Bobby and Chris, is strikingly similar to the event described in Sandoval's report filed on December 22. The Commission reasonably could have inferred that although Parks did not testify to a specific date, she was referring to an alleged event on December 22; and the Commission was entitled to evaluate the plausibility of the testimony accordingly.

The Department next argues that the Commission mischaracterized the facts. The Department points to a passage in the Commission's order which states, "... *only Parks* testified that Sandoval tried to blame a resident during the confessional phone call." (Emphasis added.) The Department notes, correctly, that Parks gave no such testimony before the Commission's hearing officer. The Commission's mistake on this point may have arisen from a comment made by a prior attorney for the Department in a written closing argument submitted to the Commission's hearing officer. In any event, it does not appear that this confusion had a significant bearing on the Commission's evaluation of the credibility of either witness. The Commission's doubts as to Parks' credibility were based, as mentioned above, on Parks' asserted failure to disclose prior incidents of abuse and on the Commission's disbelief that the abuse could have occurred at a time suggested by Parks' testimony. Neither does the confusion appear to have affected the Commission's perception of Sandoval's

credibility. Sandoval did not fix blame on another resident, although that possibility was implicit in her testimony. Whether Parks did or did not believe Sandoval had planned to blame another resident would have had little bearing on the Commission's ultimate evaluation of Sandoval's actual testimony. Therefore, we conclude that the confusion on this point was harmless with respect to the credibility issue.

The Department next argues that the case should be remanded for further consideration because the Commission did not give sufficient weight to Sandoval's own confusion over certain dates. We decline to instruct the Commission on how much weight to give evidence. *See generally Simpson v. Johnson,* 100 Idaho 357, 597 P.2d 600 (1979). Moreover, we note that Sandoval was not the only witness confused over dates. Parks also gave erroneous dates when she testified. Indeed, we agree with the Commission that confusion over dates pervaded this case and was not particularly indicative of credibility.

■ Finally, the Department contends that the Commission erroneously placed an improper burden of proof on the Department by presuming Sandoval was credible. To support this argument, the Department points to language in the Commission's opinion stating: "[T]herefore, the Commission determines again that the Department failed to *rebut* Sandoval's testimony." (Emphasis added.) We agree that the Commission's choice of words was poor and may have needlessly complicated this case. However, these words must be read in context. We believe the Commission used the word "rebut" to mean discredit. Because Sandoval denied the abuse, the Department did have the burden of discrediting her. The Department had the ultimate burden of proving the misconduct for which Sandoval was discharged. *Sandoval I,* 113 Idaho at 189, 742 P.2d at 995. We believe the Commission was simply explaining that the evidence was in relative equipoise and that the Department had failed to meet its burden of tilting the scales.

In conclusion, we affirm the district court's decision upholding the Commission's latest order. Costs to respondent. No attorney fees on appeal.